IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEIGHTON D. LINDSEY,

                OPINION AND ORDER

         Plaintiff,

                12-cv-923-bbc

     v.

TANIA CLARK, DAVID GARDNER,
ROBERT HABLE, TROY HERMANS,
STACEY HOEM, MARY MILLER,
SARAH MASON, SCOTT RUBIN ASCH,
JENNIFER ANDERSON, JERRY SWEENEY,
ANDRES NAGLE, DEANNA THEIN,
MARLA WALTERS, KEVIN TRIPP,
JEFFREY KNUPPLE, BURTON COX,
JONI SHANNON-SHARPE,
BRIAN KOOL and MELANIE HARPER,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    In this civil action brought under 42 U.S.C. § 1983, plaintiff Leighton D. Lindsey

contends that defendants Jerome Sweeney, Brian Kool, Robert Hable, David Gardner, Mary

Miller, Burton Cox, Melanie Harper, Kevin Tripp, Deaana Thein, Scott Rubin-Asch, Joni

Shannon-Sharpe, Marla Walters, Sarah Mason, Jeffrey Knuppel, Stacey Hoem, Tania Clark,

Troy Hermans, Jennifer Anderson and Andrew Nagle violated his rights under the Eighth

Amendment when they refused to reinstate his restriction on kneeling despite his knee

injury.  Defendants have moved for summary judgment, denying that any of them violated

plaintiff's rights.  Dkt. #118.  After briefing was complete on the motion, plaintiff's counsel,

Gregory Dutch, filed a motion to withdraw because he and plaintiff had experienced a breakdown in communication. Dkt. #164. Plaintiff was given an opportunity to respond to Dutch's motion and to explain whether he believed he was entitled to a stay of the summary judgment motion to allow him to supplement his materials. Id. Plaintiff did not respond to that order. I conclude from his silence that he has no objection to counsel's motion to withdraw and that he does not wish to supplement his summary judgment materials. Therefore, the motion for summary judgment will be decided on the materials already filed with the court and Dutch's motion to withdraw as counsel will be granted.

Also, plaintiff has filed a motion to compel discovery, dkt. #155, in which he says that defendants have refused to submit defendant Mary Miller for deposition because she has been on medical leave from work. Plaintiff says her deposition testimony is necessary to his case because she was a member of the committee that denied his requests for a "no kneel" restriction and that she may reveal whether she relied on medical information when serving on the committee. However, I conclude that Miller's testimony could not alter the outcome of the case, so I am denying plaintiff's motion to compel.

In their motion for summary judgment, defendants argue that some defendants are not personally responsible for plaintiff's harms, that plaintiff did not experience a "serious medical need" and that the responsible defendants were not deliberately indifferent. Plaintiff ignores defendants' first argument, says that his knee problem was serious and says that defendants ignored his need for a "no kneel" restriction. I conclude that defendants either had no personal responsibility for plaintiff's care or that they were not deliberately

2

indifferent to it.  Therefore, I am granting their motion for summary judgment.

Finally, on September 22, 2014, defendants filed a motion to stay the proceedings in this case pending the outcome of their motion for summary judgment.  Dkt. #167. Because I am granting their motion for summary judgment, this motion will be denied as moot.

From the parties' proposed findings of fact, I find that the following facts are undisputed.


UNDISPUTED FACTS

A.  Background

In February 2010, while plaintiff Leighton Lindsey was an inmate at the Columbia Correctional Institution in Portage, Wisconsin, he requested medical attention because he "banged" his knee against his bed frame.  Plaintiff saw Dr. Dalia Suliene, who ordered an x-ray of his knee, which did not reveal any problems.  Dr. Suliene's diagnosis was "prepatellar bursitis."  She ordered removal of fluid from his knee, a cortisone injection in the knee and a restriction on kneeling for six months.

At the Wisconsin Secure Program Facility and other Wisconsin prisons, inmates are required to kneel for approximately 30 seconds when entering and exiting their cells so that correctional officers can place shackles on inmates' legs.  This reduces the chance of being kicked by the inmates.

The inmates receive a pad to kneel upon, unless they are on a "back of cell

restriction." This restriction is put in place when inmates act aggressively or violently toward prison staff and it means that they are placed in the back of their cells for kneeling and shackling. Pads are not provided in these instances because correctional officers would have to leave the inmates unattended to retrieve or replace the pad. Plaintiff was subject to a "back of cell" restriction at various times during his stay at the Wisconsin Secure Program Facility, so unless he was on an "no kneel" restriction at those times, he had to kneel without a pad. Dr. Suliene's "no kneel" restriction meant that plaintiff did not have to kneel for the shackling procedure for six months.

When a "no kneel" restriction is based on medical necessity, the health services unit physicians are solely responsible for determining whether and when to place such a restriction on an inmate. A prisoner may request a "no kneel" restriction from the prison's special needs committee (known as the "comfort item review group" until April 2012), for other reasons, including the prisoner's personal comfort. Defendants David Gardner, Robert Hable and Mary Miller were members of this review committee. They do not recall whether they participated in the reviews of plaintiff's requests for a "no kneel" restriction in 2010 through 2012, but they admit it is possible that they did. The group did not maintain meeting minutes or other summary documents. In each instance, they decided only whether plaintiff needed the "no kneel" restriction for "comfort," not whether he needed it for medical purposes. Defendants Jerome Sweeney and Brian Kool became members of the special needs committee in January 2013.

B.  Chronology of Plaintiff's Knee Problems and "No Kneel" Requests

In March 2010, plaintiff was transferred to the Wisconsin Secure Program Facility. The "no kneel" restriction remained in place.  Soon after his transfer, he visited Dr. Burton Cox for a medical evaluation and told Cox that his knee was "50% better."  Cox diagnosed deep bruising that was improving.  Plaintiff visited Cox on April 8, 2010 for a checkup on his knee.  Cox prescribed plaintiff the painkiller Naproxen.  Cox continued to see plaintiff between April 2010 and July 2010 for various health complaints, but plaintiff did not complain to health services personnel about his knee during that time.  (Plaintiff attempts to dispute this fact by saying that "[he] did have his medical file review by the special needs committee for 'no kneel' restriction on May 7, 2010 and it was denied."  Plt.'s Resp. to Dfts.' PFOF, dkt. # 149, ¶ 55.  However, it is unclear what plaintiff means by this statement or how it contradicts defendants' proposed fact that plaintiff did not complain to *health services personnel* about his knee.)

On July 1, 2010, a nurse observed plaintiff jumping off his bed.  In addition, correctional officers observed plaintiff kneeling on the floor of his cell to talk to other inmates through the vents.  On July 7, 2010, after learning about these activities, Cox decided that it was no longer medically necessary for plaintiff to have a "no kneel" restriction, so he  lifted the restriction.  On July 26, 2010, a prison staff member observed Lindsey kneeling at the door of his cell.

In September 2010, plaintiff requested medical attention and was seen by nurse Barbara Johnson-Hamamoto on September 30, 2010.  She observed that plaintiff's knee was

5

red and had some minor swelling. Plaintiff told the nurse that he was required to kneel because he had been placed on a "back of cell" restriction and he filed a health services request that he have a "no kneel" restriction. The nurse prescribed the painkiller Motrin and told plaintiff to inform health services in the event his pain increased.

On October 4, 2010, Cox referred plaintiff's "no kneel" restriction request to the special needs committee (then known as the comfort item review group) because he concluded that plaintiff did not have a medical need for the restriction. (The parties do not say what happened with the request; it appears it was not approved.)

On October 6, 2010, a correctional officer observed Lindsey jump off his bed. On October 16, 2010, plaintiff saw nurse Trisha Hege for his complaints of knee pain. The nurse prescribed the painkiller Ibuprofen. In addition, she told plaintiff to apply ice and elevate his leg. Plaintiff saw nurse Johnson-Hamamoto for his knee pain on October 29, 2010. She advised him to continue taking Ibuprofen.

From October 15, 2010 to November 13, 2010, plaintiff was on a "back of cell" restriction, meaning he had to kneel without a pad during cell entry and exit.

In response to plaintiff's health service's request, Cox saw plaintiff on November 29, 2010 for a checkup of his knee. Plaintiff reported knee pain but said that the Ibuprofen helped for "a while." Cox diagnosed patellar tedonitis and prescribed the painkiller Ketoprofen. Cox did not order a "no kneel" restriction.

Cox saw plaintiff again on December 30, 2010, but did not observe any changes to plaintiff's condition. He did not order a "no kneel" restriction, but he did order that

plaintiff be seen by a physical therapist.

On January 21, 2011, the special needs committee/comfort item review group denied plaintiff's request for a "no kneel" restriction.

On February 3, 2011, a physical therapist evaluated plaintiff and recommended that he receive six to eight weeks of physical therapy.  Plaintiff attended seven weeks of physical therapy and he reported some improvement.

Between February 2011 and May 2011, plaintiff saw health services personnel, including Cox, but did not complain about his knee.

From March 24, 2011 to April 5, 2011 and then again from April 26, 2011 to August 16, 2011, plaintiff was on a "back of cell" restriction, meaning that he had to kneel without a pad during cell entry and exit.

On May 12, 2011, the special needs committee/comfort item review group denied plaintiff's request for a "no kneel" restriction.

On May 20, 2011, nurse Sheryl Kinyon saw plaintiff for knee pain.  She gave him analgesic balm and instructed him to continue to use pain medicine.  On May 21, 2011, plaintiff saw nurse O'Connell, and requested additional physical therapy for his knee. (Defendants say that plaintiff was then put on the "sick call list," but neither side explains what this means or whether plaintiff received additional physical therapy.)

On May 22, 2011, two nurses observed plaintiff standing and dancing on his bed. (Plaintiff does not dispute this, but he adds that he was also masturbating, which, he says, is evidence of his psychological state.)  On July 12, 2011, two nurses observed plaintiff

banging his feet on his cell door and jumping on his bed.  (Plaintiff does not dispute this but adds that he had to be removed from his cell that day because he was having serious behavioral issues.)

On July 21, 2011, Cox again forwarded plaintiff's request for a "no kneel" restriction to the special needs committee/comfort item review group.  On July 25, 2011, a nurse observed plaintiff banging his feet against his cell door.  On August 1, 2011, the nurse also saw plaintiff kneel on the floor of his cell to talk through the vent to other inmates.

On August 5, 2011, nurse Hege saw plaintiff for various complaints, including his knee, and she prescribed Tylenol.  She also gave plaintiff ice and told him to rest his knee.

From August 16, 2011 to February 7, 2012, plaintiff resided at the Waupun Correctional Institution. He returned to the Wisconsin Secure Program Facility on February 7, 2012.  From February 17, 2012 to February 27, 2012, he was on a "back of cell" restriction, meaning that he had to kneel without a pad during cell entry and exit.

On March 29, 2012, plaintiff submitted a health services request, asking for a "no kneel" restriction.  On April 19, 2012, the special needs committee denied this request. Between August 28, 2012 and September 15, 2012 and October 22, 2012 and December 27, 2012, plaintiff was on a "back of cell" restriction, meaning that he had to kneel without a pad during cell entry and exit.  Between March 2012 and January 2013, plaintiff mentioned his knee pain to health services only once, in July 2012, when he asked whether he could use the acetaminophen that he had been prescribed for headaches for his knee pain and Cox said he could.

On December 4, 2012, plaintiff submitted another "no kneel" request. Cox forwarded the December 2012 request to the special needs committee for review. On January 18, 2013, the committee denied plaintiff's request.

### C. Other Defendants

Defendants Melanie Harper, Kevin Tripp, Deanna Thein, Scott Rubin-Asch, Joni Shannon-Sharpe, Marla Walters, Sarah Mason, Jeffrey Knuppel, Stacey Hoem, Tania Clark, Troy Hermans and Jennifer Anderson never made any decisions regarding the propriety of a "no kneel" restriction for Lindsey. (Jeffrey's last name has been spelled Knupple in the caption, but defendants spell it Knuppel throughout their filings for summary judgment.) (Plaintiff attempts to dispute this fact by saying that there is no documentation proving that these defendants were not members of the group making those decisions but such documentation is not required. It is not surprising that no documents affirmatively state that the defendants did *not* serve on a group or committee. Defendants submitted affidavits swearing that they were not involved in the decisions on plaintiff's "no kneel" restriction. Because plaintiff cites no contrary evidence, I find this fact undisputed.) These defendants were never members of the comfort item review group but some were members of the group called the special needs committee before April 2012. At the time they were members, the comfort item review group reviewed "no kneel" restriction requests, not the special needs committee. Defendant Hermans became a member of the special needs committee that reviews "no kneel" restrictions in March 2013, after the pertinent time period in this case.

OPINION

A.  Defendant Cox

Plaintiff argues that his doctor, defendant Cox, was deliberately indifferent to plaintiff's serious medical need in violation of the Eighth Amendment by deciding that plaintiff no longer required his "no kneel" restriction and declining to reinstate the restriction, despite plaintiff's complaints of knee pain.  "A prisoner's claim for deliberate indifference must establish '(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition.'"  Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012) (quoting Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011)).

For the purposes of deciding the motion for summary judgment, I will assume that plaintiff suffered from an objectively serious medical condition and consider whether defendants have shown that plaintiff could not prove defendants' deliberate indifference. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'" Gomez, 680 F.3d at 865 (quoting Arnett, 658 F.3d at 750).  "Evidence that the official acted negligently is insufficient to prove deliberate indifference."  Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 765 (7th Cir. 2002).  Moreover, "[a] medical professional," such as defendant Cox, "is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances."  Sain v. Wood, 512 F.3d 886, 894–95 (7th Cir. 2008) (internal quotation marks omitted).  "A medical professional acting in his professional capacity may be held to have displayed

deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. (internal quotation marks omitted).

Plaintiff has presented no evidence that defendant Cox relied on anything other than medical judgment when he made his decisions on plaintiff's "no kneel" restriction. Plaintiff argues that it was unwise medical treatment to allow him to kneel with or without a pad. The evidence shows that defendant Cox made the decision because plaintiff had been observed jumping, dancing and kneeling, activities that contradicted plaintiff's complaints about the effects of kneeling on his knee. Defendant Cox may not have personally observed plaintiff's jumping, dancing and kneeling but he had no reason to question the prison staff's reports. Even if defendant Cox was wrong or unwise, his judgment was based on his *medical* assessment of plaintiff's pain level and ability to handle physical activity. Plaintiff has not shown that defendant Cox's judgment was "a substantial departure from accepted professional judgment, practice, or standards . . . . " Id.

Plaintiff alleges that defendant Cox ignored his pleas for the "no kneel" restriction, but this is a mischaracterization of the facts: defendant Cox forwarded plaintiff's request for a "no kneel" restriction at least twice to the special needs committee/comfort item review group for consideration. Moreover, nothing suggests that defendant Cox failed to consider new evidence and persisted in an unreasonable course by continuing to decline to issue a "no kneel" restriction. Gonzalez v. Feinerman, 663 F.3d 311, 314 (7th Cir. 2011) ("[Plaintiff's]

physicians were obligated not to persist in ineffective treatment."). Plaintiff reported improvement on several occasions in the time period in question and he continued to be observed jumping, kneeling and "banging" his knee throughout this time period. Finally, defendant Cox tried several different treatments. including medication and physical therapy. Nothing in the record suggests that avoidance of exacerbation by not kneeling was the only way plaintiff's knee could be effectively treated and plaintiff is not entitled to the treatment of his choice. Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, Forbes is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").

Finally, plaintiff argues that defendant Cox's decisions about plaintiff's "no kneel" restriction resulted from his deliberate indifference because plaintiff's jumping and kneeling were not evidence of his pain or physical abilities. Rather, plaintiff says, they show that he was suffering from mental illness and participating in self-harm. As an initial point, plaintiff does not explain whether defendant Cox was aware of plaintiff's alleged mental illness. Riccardo v. Rausch, 375 F.3d 521, 526 (7th Cir. 2004) ("'Deliberate indifference' means subjective *awareness*.") (Emphasis added). But even if I assume that defendant Cox was aware of plaintiff's mental problems, plaintiff has adduced no evidence that defendant ignored plaintiff's condition or refused to treat plaintiff's knee pain.

Because plaintiff has not adduced any evidence that defendant Cox was deliberately indifferent to plaintiff's serious medical condition, I am granting defendants' motion for

summary judgment with respect to plaintiff's claim against defendant Cox.


B.  Defendants Sweeney, Kool, Miller, Hable and Gardner

Defendants Miller, Hable and Gardner served on the committee that reviewed prisoners' non-medical requests for accommodations and comfort items, including things such as plaintiff's "no kneel" restrictions between July 2010 and December 2012. Defendants Sweeney and Kool served on the special needs committee in January 2013.  It is undisputed that the committee made its decisions on a non-medical basis, that is, they were not deciding whether accommodations or items should be afforded to prisoners for medical purposes but rather for personal comfort, security and other reasons.  To state a claim under the Eighth Amendment for deliberate indifference to a serious medical need, plaintiff must establish that the decision at issue related to medical care and that the decision maker had some responsibility for plaintiff's medical care.  Cf. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("[N]o prisoner is entitled to insist that one employee do another's job.").  Plaintiff does not adduce any evidence that defendants Sweeney, Kool, Hable and Gardner had authority to make medical decisions for him, so I conclude that plaintiff's claims against them must be dismissed.

With respect to defendant Miller, plaintiff argues that because Miller is the head of the Health Services Unit she should have known that plaintiff's medical requirements necessitated a "no kneel" restriction and that her disregard of this information was deliberate indifference.  Further, plaintiff says that he has not been able to depose her because the

Department of Corrections has not made her available while she has been on medical leave. Plaintiff says that defendant Miller's testimony is essential because it will reveal whether she took into consideration plaintiff's medical information when she served on the special needs committee and that summary judgment cannot be decided without her deposition. In general, a defendant's testimony is required to determine whether she acted with deliberate indifference. In this case, defendant Miller filed an affidavit in which she stated that she does not remember whether or how she participated in the decisions to deny the "no kneel" restriction to plaintiff.

Nevertheless, even if defendant Miller contradicted her affidavit in a deposition and stated that she remembered the decisions and either did or did not consult plaintiff's medical records, it would not alter the outcome of plaintiff's case. Whether or not defendant Miller considered plaintiff's medical information, her actions did not amount to deliberate indifference. If she had reviewed plaintiff's medical information, she would have seen that Cox and the nurses at the prison consistently treated plaintiff's knee problem and that defendant Cox decided to remove plaintiff's "no kneel" restriction in reliance on on medical evidence. In other words, if plaintiff is arguing that Miller made a medical decision, he has not shown that Miller's judgment was "a substantial departure from accepted professional judgment, practice, or standards . . . ." Id. Moreover, if Miller failed to consult plaintiff's medical records, she was not at fault because it is undisputed that she would not have made a decision on plaintiff's medical needs as part of the special needs committee/comfort item review group. Therefore, I conclude that Miller's deposition is unnecessary to the summary

judgment decision and that plaintiff's claims against her must be dismissed.


C.  Remaining Defendants

Claims under 42 U.S.C. § 1983 may be brought only against defendants who are personally responsible for the alleged constitutional violation.  Doyle v. Camelot Care Centers, 305 F.3d 603, 614-15 (7th Cir. 2002).  Defendants Harper, Tripp, Thein, Rubin-Asch, Shannon-Sharpe, Walters, Mason, Knuppel, Hoem, Clark and Anderson say they played no role in the decision making related to plaintiff's "no kneel" restriction and are not responsible for those decisions.  Although plaintiff argues that there is no paperwork that confirms these defendants' sworn statements, he presents no evidence that tends to show that these defendants had any involvement.  Therefore, I conclude that plaintiff cannot maintain his claim against these defendants.

There is one defendant not yet discussed.  Plaintiff alleged in his complaint that "Ralph Nagle" was a member of the special needs committee.  After the Department of Justice's acceptance of service, the caption was amended to "Andres Nagle."  Defendants state in their proposed findings of fact that "Andrew Nagle" is a social worker at the prison. Neither side otherwise discusses defendant "Nagle."  Because plaintiff has not presented any argument or proposed any facts with respect to defendant Nagle, I conclude that he has abandoned any claim against him.

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants Jerome Sweeney, Brian Kool, Robert Hable, David Gardner, Mary Miller, Burton Cox, Melanie Harper, Kevin Tripp, Deanna Thein, Scott Rubin-Asch, Joni Shannon-Sharpe, Marla Walters, Sarah Mason, Jeffrey Knuppel, Stacey Hoem, Tania Clark, Troy Hermans and Jennifer Anderson, dkt. #118, is GRANTED.  The clerk of court is directed to enter judgment for defendants and close this case.

2.  Plaintiff Leighton Lindsey's motion to compel, dkt. #155, is DENIED.

3.   Gregory Dutch's motion to withdraw as plaintiff's counsel, dkt. #164, is GRANTED.

4.  Defendants' motion to stay the proceedings, dkt. #167, is DENIED as moot.

5. Any claim against Andrew Nagle has been abandoned and is DENIED as moot.

Entered this 24th day of September, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge